USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 10, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
DEBORRAH HARVEY, as Administrator of :
the Estate of Gregory Harvey, :
: 14 Civ. 1787 (PAC)
Plaintiff, :
:
-against- : **OPINION & ORDER**
:
UNITED STATES OF AMERICA, :
:
Defendant. :
:
------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Deborrah Harvey ("Plaintiff") seeks to recover damages under the Federal Tort Claims Act ("FTCA") from the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE" or "Defendant"), alleging that ICE employees breached a duty of care to her husband, the decedent, Gregory Harvey ("Harvey"). She alleges that ICE employees violated ICE National Detention Standards (the "Standards") and failed to provide Harvey with appropriate, necessary, and timely medical care while he was held in federal immigration custody at the Orange County Correctional Facility ("OCCF") in Goshen, New York. Defendant moves to dismiss this action pursuant to Federal Rules of Civil Procedure 12(h)(3) for lack of subject matter jurisdiction, or alternatively, moves for summary judgment claiming that the matter falls within the independent contractor exception.

Defendant's motion to dismiss is DENIED. Plaintiff has sufficiently alleged a separate undelegated duty, for which Defendant may be held directly liable under the FTCA, if breached. *See Logue v. United States*, 412 U.S. 521, 530 (1973). Defendant delegated some of its health

1

care responsibilities to OCCF, an independent contractor, and is not liable for any actions of private OCCF jail staff. *See id.* Federal ICE employees retained significant responsibilities regarding off-site medical care for its detainees, however, and these responsibilities create a positive duty of care sufficient to a support a claim of federal ICE employees' direct negligence. *See Rodriguez v. United States*, No. 1:13 CV 01559, 2015 WL 3645716, at *10 (N.D. Ohio June 10, 2015); *Haskin v. United States*, 569 F. App'x 12, 15 (2d Cir. 2014). When, as here, there is a distinct question regarding the direct negligence of federal employees, jurisdiction is appropriate. *See Logue*, 412 U.S. at 533. The government can delegate its duties, but it cannot simply abdicate its responsibilities for undelegated duties. *See id.*

## BACKGROUND

ICE contracted with OCCF, a private county jail, to house federal immigration detainees under the Intergovernmental Services Agreement ("IGSA"). Def. 56.1 ECF 47 ¶ 2. OCCF must comply with the Standards, which require that OCCF detainees receive "access to appropriate and necessary medical [services] ... [t]imely responses to medical complaints; and [h]ospitalization as needed within the local community." Pl. 56.1 ECF 51 ¶ 3; Pl. Decl. Exh. 4 National Detention Standards at 277, 281. ICE conducts inspections to ensure OCCF complies with the Standards and is "completely involved," if need-be, for arranging both on-site and off-site detainee medical care. Pl. 56.1 ¶ 3. The ICE Field Medical Coordinator (the "Medical Coordinator") and the ICE Jail Liaison Unit (the "Liaison Unit") maintain communication with OCCF staff and detainees to ensure adequate care. *Id.* The Medical Coordinator is the point person for ICE medical care. Pl. Decl. Exh. 8 Deposition of Rudolph Small ("Small Depo.") at 7. Lieutenant Rudolph Small ("Lt. Small"), a registered nurse, was the Medical Coordinator during Harvey's stay at OCCF. Small Decl. ¶ 2. Liaison Unit officers, on the other hand, are not

medically trained but serve as the "boots on the ground, to ensure that things are done in a timely manner for the detainee." Small Depo. at 57–58. A Liaison Unit officer visits OCCF bi-weekly and maintains a general log of every detainee interaction. Pl. 56.1 ¶ 3. The Liaison Unit's responsibilities include "following up" and "immediately notify[ing]" a supervisory ICE officer of any medical issues.[1] Id. ¶¶ 3, 19; Pl. Decl. ECF 52 Exh. 5 Jail Liaison Unit Standard Operating Procedures at 96–97.

The IGSA provides that OCCF has full responsibility for all on-site and any emergency medical care provided to federal detainees. Pl. 56.1 ¶ 3. Nonetheless, ICE's Division of Immigration Health Service ("DIHS") remains the "agent and final health authority for ICE" when non-emergency or non-routine **off-site** healthcare is required. Pl. 56.1 ¶ 3; Small Decl. ECF 44 Exh. A IGSA at 6. OCCF must request and receive prior approval from DIHS if a detainee requires non-emergent off-site care. IGSA at 6. DIHS may override or reject OCCF's request if it determines that another form of care is cheaper or better fits detainee needs. Id. But, OCCF remains responsible for transporting the detainee to and from the off-site facility, as well as supervising the detainee at the off-site facility for up to 14 days. Id. at 7–14.

Gregory Harvey, a citizen of Jamaica, was detained at OCCF from 2010 to 2012. Pl. 56.1 ¶ 1. Officer Daniel Marino ("Marino") and Officer Shaun McAuliffe ("McAuliffe") of ICE's Liaison Unit were assigned to OCCF during this period.[2] Pl. 56.1 ¶ 3. In January 2011, Harvey began complaining to OCCF's on-site medical staff of an upset stomach, lumbar pain, abdominal pain, and vomiting. Id. ¶ 23. Between January 2011 and February 2012, Harvey made six

---

[1] The Liaison Unit is also responsible for addressing concerns regarding detainees' deportation cases, reviewing the jail's daily population reports, and facilitating consular visits or telephonic interviews. Pl. Decl. ECF 52 Exh. 5 Jail Liaison Unit Standard Operating Procedures at 96–97.
[2] Marino was assigned to the Liaison Unit at OCCF in 2010 until November 2011 and McAuliffe was assigned from November 2011 until Mr. Harvey's release. Marino Decl. ECF 46 ¶ 2; McAuliffe Decl. ECF 45 ¶ 2.

complaints to OCCF's on-site medical center regarding the same gastrointestinal issues. *Id.* ¶¶ 23–24. Harvey raised these medical issues during a meeting with Marino in August 2011[3] and again during a meeting with McAuliffe in February 2012. Def. 56.1 ¶¶ 23, 25. All of the known interactions between Harvey and the Liaison Unit officers, including the two meetings in August and February, are based on the Liaison Unit logbook. Pl. 56.1 ¶ 22. Plaintiff claims that the entries in the log books are not reliable; and that, "Mr. Harvey spoke to the ICE officers about his health problems and the lack of adequate medical care at OCCF more frequently than is recorded in the log books." *Id.*

After the February 2012 meeting, OCCF requested DIHS' approval of an off-site gastrointestinal consultation. Def. 56.1 ¶ 8. DIHS approved the request two days later. *Id.* ¶¶ 8–9. At the off-site consultation on March 13, 2012, Dr. John Podeszwa ("Dr. Podeszwa") recommended an endoscopy procedure for Harvey. *Id.* ¶ 10; Pl. Decl. Exh. D. As will be seen, the expected procedure was still months away. Def. 56.1 ¶ 30. On March 20, Harvey met with McAuliffe and requested an update on an outside medical procedure. *Id.* ¶ 25. McAuliffe noted in his logbook that he "will check with medical" regarding the issues Harvey brought up on March 20, but there is no confirmation that he did in fact check.[4] McAuliffe Decl. Exh. B Liaison Logbook at 25. On May 10, Harvey met with McAuliffe again and was very irritated, telling McAuliffe that "ICE [was] ignoring his medical needs" and that he was "coughing up

---

[3] Defendant alleges that this was the first time Harvey communicated his medical concerns to ICE staff. Def. 56.1 ¶ 23. Plaintiff disputes this but does not specify an alternative date. Pl. 56.1 ¶ 23.
[4] Contrast this March 13 entry with a February 22 log entry that affirmed McAuliffe did in fact notify the medical staff: "spoke to medical about Harvey. They said he went back on his meds the same day I spoke to him." *See* McAuliffe Decl. Exh. B Liaison Logbook at 78.

4

blood."[5] Pl. 56.1 ¶ 26. In his logbook for that day, McAuliffe wrote, "Lt. Small notified;" but in his deposition, Lt. Small had "no recollection" of whether McAuliffe notified him of Harvey's medical status following their May 10th meeting. McAuliffe Decl. Exh. B Liaison Logbook at 33; Small Depo. at 59. On May 11, Harvey complained to McAuliffe about his health again and refused to see on-site OCCF doctors despite McAuliffe's instruction to engage with OCCF's on-site medical staff. Def. 56.1 ¶ 27. There is no indication in McAuliffe's May 11 log entry that McAuliffe planned to notify medical staff about the issue: the entry only states that Harvey "[c]ontinues to complain about health, refuses to see Medical, wants an outside doctor." *See* McAuliffe Decl. Exh. B Liaison Logbook at 34.

Between May 25, 2012 and June 15, 2012, Harvey had five more meetings with McAuliffe. Def. 56.1 ¶¶ 28–29. The parties dispute whether medical issues were brought up during these meetings. *See id.*; Pl. 56.1 ¶¶ 28–29. It is uncontroverted, however, that four months passed from the time of Dr. Podeszwa's recommendation in March, until OCCF contacted DIHS on July 3 to approve an EGD (esophagogastroduodenoscopy)[6] request for Harvey. Def. 56.1 ¶ 30. DIHS approved the request two days later and another three weeks passed before Harvey had his EGD on July 25. *Id.* ¶¶ 13–14. The next day, Harvey was admitted to the hospital, diagnosed with cancer, and thereafter released from OCCF. *See* Pl. 56.1 ¶ 30. In the hospital, as McAuliffe served Harvey with his release papers, Harvey told McAuliffe that "he wasn't lying about his medical concerns, that they were, in fact, real." *Id.*

---

[5] Harvey testified that he once had a conversation with McAuliffe where he told the officer he was dying and pleaded for hospital treatment but McAuliffe responded, "[n]o, you're not dying ... [you] got to wait." Pl. 56.1 ¶ 26. Plaintiff alleges that this conversation took place on May 10. *Id.*

[6] An EGD is a type of endoscopy procedure.

5

McAuliffe "just kind of listened to what he said and, on a human level, apologized for the circumstances, but [he] served him the paperwork and departed the room." *Id.*

## LEGAL STANDARD

### I. Subject Matter Jurisdiction

The court must dismiss an action at any time if it finds that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). The plaintiff has the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Although all material factual allegations in the complaint are accepted as true, the court must not draw inferences in favor of the plaintiff. *Takeda Chem. Indus., Ltd. v. Watson Pharm., Inc.*, 329 F. Supp. 2d 394, 401–02 (S.D.N.Y. 2004) (citing *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) and *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)).

### II. Summary Judgment

Summary judgment is appropriate where the party seeking summary judgment proves that there are no issues of material fact. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–55 (1986). Moreover, "the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995).

### III. Federal Tort Claims Act

The FTCA functions as a limited waiver of the United States' sovereign immunity. *Liranzo v. United States*, 690 F.3d 78, 85 (2d Cir. 2012). It allows for recovery of damages if a government employee's negligent actions cause injury. 28 U.S.C. § 2671. The FTCA explicitly excludes "any contractor with the United States" from its coverage; this is commonly referred to

6

as the "independent contractor exception." *Id.*; *see Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997). The United States is not liable for injuries caused by private jail staff because under this exception the penal staff is not considered to be Federal employees. *Logue*, 412 U.S. at 530. Furthermore, the government is not liable for negligent supervision of private jail medical staff. *See Hentnik v. United States*, No. 02-CV-9498 (DC), 2003 WL 22928648 (S.D.N.Y. Dec. 10, 2003).

That does not end the inquiry, however, because the United States may still be liable if, during its handling of a prisoner, a federal employee breaches a duty of care separate from those duties that were delegated to a private prison. *See Logue*, 412 U.S. at 532–33 (remanding to determine whether federal employees, before transferring prisoner to state jail, should have made "specific arrangements" after learning of prisoner's suicidal tendencies). The distinction between local jail staff, who work for an independent contractor and whose actions are exempt from the FTCA, and federal employees, whose negligent actions are covered by the FTCA, is crucial in determining subject matter jurisdiction. *Rodriguez*, 2015 WL 3645716, at *8-10 (finding subject matter jurisdiction despite all injuries occurring within private prison because federal marshals were sufficiently involved with diabetic plaintiff's medical situation to have separate duty of care). "[O]nly upon the finding that the government delegated its **entire** duty of care may the court dismiss the claim for lack of jurisdiction under the FTCA's independent contractor exception." *Edison v. United States*, 822 F.3d 510, 518 (9th Cir. 2016).

## DISCUSSION

### I. Subject Matter Jurisdiction

Defendant argues that the Court should dismiss the Complaint pursuant to Rule 12(h)(3) for lack of subject matter jurisdiction. ECF 41. The motion is denied because Defendant had a separate undelegated duty of care towards Harvey for which it can be liable under the FTCA.

As an initial matter, Plaintiff has conceded that OCCF's jail and medical staff were not agencies, instrumentalities, or employees of the United States. Pl. Opp. Br. at 3. Moreover, Plaintiff does not seek to hold the government liable for negligent supervision of OCCF staff. *Id.* at 3. OCCF jail and medical staff are independent contractors and therefore the United States is not liable under the FTCA for any of their actions or conduct. *See* 28 U.S.C. § 2671; *Roditis*, 122 F.3d at 111. Nonetheless, the Court "must [still] determine whether [p]laintiffs have alleged a separate nondelegable or undelegated duty, which the United States could be held directly liable for breaching." *See Edison*, 822 F.3d at 518. Here, Plaintiff alleges that the United States is directly liable for negligently handling Harvey's medical care while he was held in federal custody.

The Standards provide that federal detainees at OCCF have a right to adequate and timely medical care. Pl. Decl. Exh. 4 National Detention Standards at 277, 281. The issue is whether the duty to provide such care was delegated **in its entirety**. *See Edison*, 822 F.3d at 518. ICE delegated only part of the duty to ensure adequate and timely medical care for its detainees to OCCF. *See* Def. 56.1 ¶ 3. ICE retained the duty to ensure adequate and timely health care whenever detainees required non-emergent off-site medical care – it remained the "agent and final health authority" for all such needs. IGSA at 6; *see* Pl. 56.1 ¶ 3; *B & A Marine Co. v. Am. Foreign Shipping Co.*, 23 F.3d 709, 713 (2d Cir. 1994) (finding, in independent contractor

8

analysis context, use of word "agent" in governing contract suggestive of government liability); *Fisko v. U.S. Gen. Servs. Admin.*, 395 F. Supp. 2d 57, 62 (S.D.N.Y. 2005) (noting that terms of governing contract between contractor and federal agency are highly relevant when evaluating subject matter jurisdiction under FTCA).

ICE employees had various non-delegated responsibilities that contributed to Harvey's delayed cancer diagnosis. *See Haskin*, 569 F. App'x at 15; *Alinsky v. United States*, 415 F.3d 639, 645-46 (7th Cir. 2005) (holding that independent contractor exception barred plaintiffs' claim based upon actions of independent contractor, but independently evaluating plaintiffs' claim based on failure of Federal Aviation Administration to respond to request for funding and additional air traffic controllers, as such responsibilities were not delegated to independent contractor); *Berkman v. United States*, 957 F.2d 108, 114 (4th Cir. 1992) (finding subject matter jurisdiction in slip-and-fall case despite third party's responsibility to clean spill because Federal Aviation Administration's allegedly negligent inspection and maintenance of terminal door could have been partial cause of injury). Marino testified that as a Liaison Unit officer he visited OCCF three times per week, conveyed any medical concerns to either OCCF on-site medical staff or an ICE supervisory officer, and ensured doctor's appointments were properly scheduled. Pl. 56.1 ¶ 3. McAuliffe confirmed that the Liaison Unit's role was to address detainee medical concerns, immediately notify supervisory officers of such concerns, and follow up with jail medical staff. *Id.* Plaintiff sufficiently alleges that the Liaison Unit's failure to immediately notify a supervisory officer of Harvey's medical concerns or follow-up with OCCF medical staff regarding such concerns, constituted negligence on ICE's part and was at least a partial cause of Harvey's late cancer diagnosis. Sec. Am. Compl. ¶¶ 38-39; *see Berkman*, 957 F.2d at 114.

In *Haskin*, the United States Postal Service ("USPS") hired an independent contractor to automatically remove snow accumulation over two inches but retained added responsibilities to call for removal or clean the snow itself whenever snow accumulation was below two inches. *See Haskin*, 569 F. App'x at 15. The court in *Haskin* found that it had subject matter jurisdiction despite the independent contractor exception because plaintiff was injured in front of a USPS building when snow accumulation was **under** two inches. *Id.* at 16. Here, too, ICE contracted with OCCF to provide detainees on-site and emergency healthcare, but retained added responsibilities for all off-site non-emergent health needs. *See id.* at 15; IGSA at 6. For example, ICE had ultimate authority to approve or deny all off-site non-emergent requests – a power they did not hold for on-site requests.[7] *See* IGSA at 6. The untimely diagnosis of Harvey's stomach cancer was the result of an allegedly delayed non-emergent **off-site** endoscopy procedure. *See* Sec. Am. Compl. ¶ 30. That is sufficient for subject matter jurisdiction because the claim falls within ICE's undelegated duties and responsibilities.

Similar to other cases where subject matter jurisdiction existed, despite detainee injuries occurring within a private prison, ICE employees were heavily involved with and actively aware of Harvey's particular medical condition. *See Logue*, 412 U.S. at 533; *Edison*, 822 F.3d at 518; *Lin Li Qu v. Cent. Falls Det. Facility Corp.*, 717 F. Supp. 2d 233, 240 (D.R.I. 2010) (finding valid negligence claim against federal government, whose employees actively ignored demands for medical attention until decedent was diagnosed with cancer); *Estate of Belbachir v. United*

---

[7] The Medical Coordinator responsible for making such approvals, Lt. Small, confirmed his responsibility to pre-authorize all off-site requests. Pl. 56.1 ¶ 3. Although pre-approval powers are irrelevant to an independent contractor analysis, they are relevant to the separate undelegated duty analysis, and suggestive of such duty. *Compare Rodriguez*, 2015 WL 3645716, at *8–9 (finding government's pre-authorization power indicative of separate undelegated duty); *with United States v. Orleans*, 425 U.S. 807, 818 (1976) (holding pre-authorization of decision-making insufficient to establish control over independent agency in independent contractor analysis).

*States* No. 08-CV-50193 (PGR) (N.D. Ill.) (May 21, 2009) (denying federal government's motion to dismiss complaint filed by parents of detainee who committed suicide while in private jail); *Rodriguez*, 2015 WL 3645716, at *8–9. Regarding outside medical treatment, ICE was exactly like the federal agency in *Rodriguez, supra* at 7: it "had knowledge of every time the [decedent] was sent out to receive medical treatment, was required to be notified of all medical treatment, had to approve all medical treatment, and had to pay for all medical treatment." 2015 WL 3645716, at *9; *see* IGSA at 6. During the eighteen months from January 2011 until July 2012, when OCCF finally requested the EGD necessary to diagnose Harvey's cancer, the Liaison Unit had ten meetings with Harvey. *See* Def. 56.1 ¶ 23–29. In at least five of those meetings, the Liaison Unit was notified of Harvey's deteriorating medical condition. *See id.*; Pl. 56.1 ¶ 23–29. Defendant's argument that *Rodriguez* is distinguishable because ICE "had no basis to be aware of any vulnerability Mr. Harvey may have had for cancer" lacks factual support. Pl. Brief at 14, n. 6. If McAuliffe and Marino "immediately notif[ied]" a supervisory ICE official as per the Liaison Unit instructions, there would have been at least two federal employees with a basis to be aware of Harvey's medical vulnerability as early as August 2011;[8] and at least three federal employees as early as February 2012.[9] Pl. Decl. Exh. 5 Jail Liaison Unit Standard Operating Procedures at 96.

Concededly, unlike the detainees in *Rodriguez* and *Lin Li Qu*, Harvey did not file any lawsuits against ICE while being held at OCCF. *See* 717 F. Supp. 2d at 240; 2015 WL 3645716, at *8–9. But, litigation is not a pre-requisite for establishing subject matter jurisdiction in cases involving federal arrestees injured at private prisons. *See Logue*, 412 U.S. at 533; *Edison*, 822

---

[8] In August 2011, Harvey discussed his medical issues with Officer Marino. *Supra* at 4.
[9] In February 2012, Harvey discussed his medical issues with Officer McAuliffe. *Supra* at 4.

11

F.3d at 518; *Lin Li Qu*, 717 F. Supp. 2d at 240; *Estate of Belbachir*, No. 08-CV-50193 at *3. Additionally, although some of the cases cited above involve federal agencies having unique foreknowledge of a detainee's risk of harm before transferring the detainee into custody of a third party, subject matter jurisdiction does not depend on federal officials having such foreknowledge. *See Edison*, 822 F.3d at 518; *Lin Li Qu*, 717 F. Supp. 2d at 240. Whether the risk of harm was individualized or widespread is irrelevant to a subject matter jurisdiction analysis. *Compare Edison*, 822 F.3d at 518–19 (involving prison-wide cocci epidemic); *with Logue*, 412 U.S. at 533 (regarding death of one suicidal detainee); *Lin Li Qu*, 717 F. Supp. 2d at 240 (adjudicating death of prisoner with cancer); *Estate of Belbachir*, No. 08-CV-50193 at *3; *Rodriguez*, 2015 WL 3645716, at *8–9.

The Court has subject matter jurisdiction because Defendant undeniably had a duty of care towards Harvey that was separate from those duties delegated to OCCF. Whether this was a duty to ensure timely receipt of off-site non-emergent medical care under the Standards or a duty to adequately perform undelegated responsibilities is a question of fact to be determined at trial. *See Estate of Belbachir*, No. 08-CV-50193 at *3 (holding that independent contractor exception does not insulate federal employees who fail to follow Detention Standards); *Haskin*, 569 F. App'x at 15. Whether ICE agents were negligent in these duties is another question of fact to be resolved at trial. Regardless, the Court retains jurisdiction over Defendant for its own actions: the independent contractor exception excludes the actions of private jail staff from the negligence analysis, but does not permit federal employees to abdicate their responsibility for undelegated duties. *See Logue*, 412 U.S. at 533. Federal ICE agents owed Harvey a duty of care separate from any duty OCCF owed Harvey. Thus, any negligence in their conduct is covered by the FTCA, and subject matter jurisdiction is appropriate. *See id.*

## II. Summary Judgment

In the alternative, Defendant argues it is entitled to summary judgment on the jurisdictional issue pursuant to Rule 56(a) because "there is no genuine issue of material fact regarding the applicability of the independent contractor exception." ECF 41; Def. Reply Br. at 10, n. 5. Defendant is correct insofar as there is no dispute that the independent contractor exception is applicable here, and Plaintiff concedes as much. But Defendant is quite incorrect in asserting that the exception alone bars all claims against it. *Supra* at 7–11. As demonstrated, Defendant had a separate undelegated duty, apart from any duty covered by the independent contractor exception, and Defendant may be liable under the FTCA for its breaches of such duty. *Id.* Jurisdiction is established under the Rule 12(h)(3) standard; and summary judgment is inappropriate under the more lenient Rule 56(a) standard.

## **CONCLUSION**

For all of the foregoing reasons, the Court DENIES Defendant's motion. The Parties are directed to appear at a status conference at 11:30 a.m. on Tuesday, September 5, 2017 in courtroom 14C. The clerk of court is ordered to terminate the pending motion at Dkt. 41.

Dated: New York, New York
July 10, 2017

SO ORDERED

PAUL A. CROTTY
United States District Judge